TOMAS C. LEON
(CA SBN 321117)
tommie@leon.law
(909) 616-5969
LEON LAW, LLP
1145 W. 55th Street
Los Angeles, CA 90037
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GS HOLISTIC, LLC,

Plaintiff,

v.

COSMO SMOKE SHOP LLC d/b/a
COSMO SMOKE SHOP, and
GEORGE A. MALEK,

Defendants.

No.  2:24-cv-09719

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

The Plaintiff, GS HOLISTIC, LLC (hereinafter referred to as "GS"), by and through its undersigned counsel, hereby files this, its Complaint against the Defendants, COSMO SMOKE SHOP LLC d/b/a COSMO SMOKE SHOP, and GEORGE A. MALEK, and alleges, as follows:

**Jurisdictional Allegations**

1.      This is a civil action against the Defendants for trademark infringement and counterfeiting, under the Lanham Act (15 U.S.C. § 1051 *et.  seq*.), and design patent infringement arising under the patent laws of the United States, 35 U.S.C. §§

1

1 *et. seq.*

2.    This Court has subject matter jurisdiction over the claims in this action that relate to trademark infringement, counterfeiting, and patent infringement pursuant to the provisions of 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332, and 1338.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the Defendants reside in this district, the cause of action occurred in this district, and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and Defendants have extensive contacts with this judicial district relating to GS's claims.    Defendants conduct regular and systematic business transactions in this judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of GS.

## Parties

4.    GS HOLISTIC, LLC is a Delaware Limited Liability Corporation that has its principal place of business at 7162 Beverly Boulevard, #207, Los Angeles, California 90036.    GS is the registered owner of the G Pen and Stündenglass trademarks in addition to Hookah design patents.

5.    COSMO SMOKE SHOP LLC d/b/a COSMO SMOKE SHOP (hereinafter referred to as "COSMO") is a limited liability company that was organized and existing under the laws of the State of California and has its principal place of business at 307 Wall St, Los Angeles, CA 90013. GEORGE A. MALEK

owns and operates the COSMO at that location.   COSMO is a citizen of California.

6.    GEORGE A. MALEK is domiciled in and a resident of Los Angeles, California, and is *sui juris.*   GEORGE A. MALEK is a citizen of California and regularly conducts and solicits business in the State of California (including this Judicial District). GEORGE A. MALEK is the owner of, COSMO SMOKE SHOP LLC d/b/a COSMO SMOKE SHOP. GEORGE A. MALEK controls and directs the activities, including the infringing activities, of Defendant COSMO SMOKE SHOP LLC d/b/a COSMO SMOKE SHOP.

## **Facts Common to All Counts**

### **The History of The G Pen Brand.**

7.    Since 2012, GS has marketed and sold products using the well-known trademark "G Pen."  The G Pen branded products, such as portable vaporizers and accessories related thereto, are widely recognized nationally and internationally. Indeed, the G Pen brand is one of the leading companies in the industry, known for the high quality of the products at an achievable price point for all.

8.    For nearly twelve years, GS has worked to distinguish the G Pen brand as the premier manufacturer of vaporizers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience.   G Pen branded products embody a painstaking attention to detail, which is evident in many facets of authentic G Pen branded products.  It is precisely because of the unyielding quest for quality and unsurpassed

innovation that G Pen branded products have a significant following and appreciation amongst consumers in the United States and internationally.

9.    As a result of the continuous and extensive use of the trademark "G PEN," Grenco Science was granted both valid and subsisting federal statutory and common law rights to the G Pen trademark.

10.    In 2016, Grenco Science assigned to GS all the rights associated with the G PEN trademark and other marks associated with the different products sold by GS.  The assignment to GS was duly recorded with the United States Patent and Trademark Office on May 24, 2016.  True and correct copy of the assignments between Grenco Science and GS is attached hereto and marked as Exhibit "A."

11.    GS is the rightful owner of United States trademarks, which are registered on the Principal Register.  The following is a list of GS's relevant federally registered trademarks:

     i.    U.S. Trademark Registration Number 4,390,645 for the standard character mark "G Pen" in association with goods further identified in registration in international class 010.

     ii.    U.S. Trademark Registration Number 5,368,594 for the word mark "G Pen" and its logo in association with goods further identified in the registration in international class 010.

    iii.    U.S. Trademark Registration Number 4,470,963 for the standard character mark "Grenco Science" in association with goods further identified in the registration in international class 010.

    iv.    U.S. Trademark Registration Number 4,616,071 for the standard

4

character mark "Grenco" in association with goods further identified in the registration in international class 010.

v. U.S. Trademark Registration Number 4,466,586 for the word mark "G" and its logo in association with goods further identified in the registration in international class 010.

vi. U.S. Trademark Registration Number 5,405,360 for the word mark "G Grenco Science" and its logo in association with goods further identified in the registration in international class 010.

vii. U.S. Trademark Registration Number 5,405,361 for the word mark "G Grenco Science" and its logo in association with goods further identified in the registration in international class 010.

viii. U.S. Trademark Registration Number 5,264,986 for the standard character mark "G Pen Elite" in association with goods further identified in the registration in international class 010.

ix. U.S. Trademark Registration Number 5,264,988 for the stylized design mark "G Pen Elite" in association with goods further identified in the registration in international class 010.

12. The above U.S. registrations are valid, subsisting and in full force and effect. True and correct copies of the Trademark Registrations are attached hereto and marked as Exhibit "B." Hereinafter, GS utilizes the phrase "G Pen Marks" to refer to, collectively, GS's federally registered, above-listed trademarks. A number of these marks are assigned to GS.

**The G Pen Brand in the United States.**

13. Pursuant to the trademark assignment between Grenco Science, Inc. and GS Holistic, LLC, GS has used the G Pen Marks in commerce throughout the United

States, continuously, since 2016, in connection with the manufacturing of vaporizing products.

14.     The G Pen Marks are distinctive to both the consuming public and the Plaintiff's trade.  GS's G Pen branded products are made from superior materials. The superiority of G Pen branded products is not only readily apparent to consumers, but to industry professionals as well.

15.     GS's Trademarks are exclusive to GS and appear clearly on GS's Products, as well as on the packaging and advertisements related to such products. GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting GS's Trademarks. As a result, products bearing GS's Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS.

16.     GS's Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs.  Because of these and other factors, the GS brand and GS's Trademarks are famous throughout the United States.

17.     Since 2016, GS has worked to build significant goodwill in the G Pen brand in the United States.  GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the G Pen brand, via point of purchase materials, displays, through their websites, attending industry trade shows,

and through social media promotion.

18.    In fact, GS's Products have been praised and recognized by numerous online publications, as well as publications directed to the general public.

19.    Due to the high quality of the brand and products, GS has collaborated with numerous celebrities and companies to create collaborations.

20.    GS sells its products under the G Pen Marks to authorized stores in the United States, including in California.  GS has authorized approximately 5,000 stores in the United States selling its products.  As such, G Pen branded products reach a vast array of consumers throughout the country.

21.    It is because of the recognized quality and innovation associated with the G Pen Marks that consumers are willing to pay higher prices for genuine G Pen branded products.  For example, a G Pen brand vaporizer ranges in price from $70 to $250, while a non-G Pen branded product of equivalent size and technology will usually sell from $11 to $20.

22.    It is exactly because of their higher sales value that G Pen branded products are targeted by counterfeiters.  These unscrupulous people and entities tarnish the G Pen brand by unlawfully selling vaporizers that have identical, or nearly identical, versions of the G Pen Marks affixed to products that are made with inferior materials and technology, thereby leading to significant illegitimate profits by store owners, such as the Defendants in this case.  In essence, COSMO SMOKE SHOP and GEORGE A. MALEK mislead consumers by selling in their stores low grade

products that free ride on the goodwill of the G Pen brand, and in turn, GEORGE A. MALEK reap substantial ill-gotten profits.    GEORGE A. MALEK's conduct contributes to the complete flooding of the marketplace with counterfeit products, which results in lost sales and damages to GS and irreparable harm to the G Pen brand's image.

23.    The sale of the counterfeit products also cause harm to GS in that legitimate store owners will not purchase authentic G Pen vaporizers when stores selling counterfeit products are selling products which appear to be identical and at half the price which authentic products can be sold.

24.    Unfortunately, the current U.S. marketplace is saturated with counterfeit products – like those GEORGE A. MALEK through their stores, COSMO SMOKE SHOP,  have sold.  As such, GS has been forced to scrupulously enforce its rights in order to protect the G Pen Marks against infringement.    By exercising its Enforcement Rights, GS has proactively and successfully policed the unauthorized use of the G Pen Marks and/or counterfeit G Pen branded products nationwide.  GS has had to bear great expense to seek out and investigate suspected counterfeiters in their attempt to clean up the marketplace.

**The History of The Stündenglass Brand.**

25.    Since 2020, GS has marketed and sold products using the well-known trademark "Stündenglass."   The Stündenglass branded products, such as gravity infuser waterpipes and accessories related thereto, are widely recognized nationally

8

and internationally.  Indeed, the Stündenglass brand is one of the leading companies in the industry, known for high quality and innovation of products.

26.    For approximately four years, GS has worked to distinguish the Stündenglass brand as the premier manufacturer of gravity infuser waterpipes by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior infusing experience.  Stündenglass branded products embody a painstaking attention to detail, which is evident in many facets of authentic Stündenglass branded products.  It is precisely because of the unyielding quest for quality and unsurpassed innovation that Stündenglass branded products have a significant following and appreciation amongst consumers in the United States and internationally.

27.    As a result of the continuous and extensive use of the trademark "STÜNDENGLASS," GS was granted both valid and subsisting federal statutory and common law rights to the Stündenglass trademark.

28.    GS is the rightful owner of United States trademarks, which are registered on the Principal Register.  The following is a list of GS's relevant federally registered trademarks:

      i.  U.S.  Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011.

     ii.  U.S.  Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further

9

identified in the registration in international class 034.

 iii. U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

 iv. U.S. Trademark Registration Number 7,028,399 for the standard character mark "Gravity Perfected" in association with goods further identified in registration in international class 010.

29. The above U.S. registrations are valid, subsisting and in full force and effect. True and correct copies of the Trademark Registrations are attached hereto and marked as Exhibit "C." Hereinafter, GS utilizes the phrase "Stündenglass Marks" to refer to, collectively, GS' federally registered, above-listed trademarks.

**The Stündenglass Brand in the United States.**

30. GS has used the Stündenglass Marks in commerce throughout the United States, continuously, since 2020, in connection with the manufacturing and sale of gravity infuser waterpipes and accessories.

31. The Stündenglass Marks are distinctive to both the consuming public and the Plaintiff's trade. GS's Stündenglass branded products are made from superior materials. The superiority of Stündenglass branded products is not only readily apparent to consumers, but to industry professionals as well.

32. The Stündenglass Trademarks are exclusive to GS and appear clearly on GS's Stündenglass Products, as well as on the packaging and advertisements related to the products. GS has expended substantial time, money, and other

resources in developing, advertising, and otherwise promoting and protecting these Trademarks.  As a result, products bearing GS's Stündenglass Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS.

33.    GS' Stündenglass Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs.  Because of these and other factors, the GS brand, the Stündenglass brand, and GS's Stündenglass Trademarks are famous throughout the United States.

34.    Since 2020, GS has worked to build significant goodwill in the Stündenglass brand in the United States.  GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stündenglass brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion.

35.    In fact, Stündenglass Products have been praised and recognized by numerous online publications, as well as publications directed to the general public.

36.    Due to the high quality of the brand and products, GS has collaborated with numerous celebrities and companies to create collaborations for the Stündenglass products.

37.    GS sells its products under the Stündenglass Marks to authorized stores in the United States, including in California.  GS has authorized approximately 3,000

11

stores in the United States to sell its products.   As such, Stündenglass branded products reach a vast array of consumers throughout the country.

38.    It is because of the recognized quality and innovation associated with the Stündenglass Marks that consumers are willing to pay higher prices for genuine Stündenglass products.  For example, a Stündenglass brand gravity infuser waterpipe is priced at retail at $599.95, while counterfeit non-Stündenglass gravity infuser waterpipe with the fake Stündenglass mark are being sold for a range of $199 to $600.

39.    It is exactly because of their higher sales value that Stündenglass branded products are targeted by counterfeiters.  The counterfeiters tarnish the Stündenglass brand by unlawfully selling gravity infuser waterpipes that have identical, or nearly identical, versions of the Stündenglass Marks affixed to products that are made with inferior or different materials, thereby leading to significant illegitimate profits by store owners, such as the Defendants in the instant case.

40.    In essence, the Defendants mislead consumers by selling in their stores low grade products that take a free ride on the goodwill of the Stündenglass brand, and in turn, the Defendants reap substantial ill-begotten profits.  The Defendants' offering for sale of counterfeit Stündenglass products contributes to the complete flooding of the marketplace with Stündenglass counterfeit products, which results in lost sales and damages to GS and irreparable harm to the Stündenglass brand's image.

41.    Moreover, GS offers a 10-year warranty on its products, and when the counterfeit products break or need repair, innocent purchasers learn that they do not

12

have a warranty on the goods, tarnishing GS's public image.

42.    The sale of the counterfeit products also cause harm to GS in that legitimate store owners will not purchase authentic Stündenglass gravity infuser waterpipes when stores selling counterfeit products are selling products which appear to be identical and at half the price which authentic products can be sold.

43.    Unfortunately, the current U.S. marketplace is saturated with counterfeit Stündenglass products – just like those the Defendants, through their store, COSMO SMOKE SHOP, are offering for sale.  As such, GS has been forced to scrupulously enforce its rights in order to protect the Stündenglass Marks against infringement. By exercising its Enforcement Rights, GS has proactively and successfully policed the unauthorized use of the Stündenglass Marks and/or counterfeit Stündenglass branded products nationwide.  GS has had to bear great expense to seek out and investigate suspected counterfeiters in GS's attempt to clean up the marketplace.

**Defendants' Counterfeiting and Infringing Activities**

44.    The Defendants are in the retail smoke shop business operating various retail stores as mentioned above, and they sell water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and other smoking-related devices.

45.    Beginning on a date that is currently unknown to GS, the Defendants, without the consent of GS, have offered to sell and sold, both counterfeit G Pen products and counterfeit Stündenglass products with the G Pen trademarks and Stündenglass trademarks, respectively, and without the consent of GS.  In fact, they

13

have offered counterfeit vaporizers bearing imitations of the G Pen Trademarks (hereinafter referred to a "Counterfeit G Pen Goods") and counterfeit gravity infuser waterpipes bearing imitations of the Stündenglass Trademarks (hereinafter referred to as "Counterfeit Stündenglass Goods"), neither were made or authorized by GS.

46.    Nevertheless, the Defendants have offered for sale in commerce the Counterfeit G Pen Goods and Counterfeit Stündenglass Goods, specifically, the Defendants have offered for sale reproductions, counterfeits, copies and/or colorable imitations of one or more of the G Pen Marks (hereinafter the "Infringing G Pen Marks"), and one or more of the Stündenglass Marks (hereinafter the "Infringing Stündenglass Marks"), detailed above.

47.    Beginning on a date that is currently unknown to GS, the Defendants have, without the consent of GS, offered for sale in their store, Counterfeit G Pen Goods bearing the Infringing G Pen Marks and Counterfeit Stündenglass Goods bearing the Infringing Stündenglass Marks, bearing the likeness of the G Pen Trademarks and Stündenglass Trademarks, respectively, in the United States.

48.    The marks affixed to the Counterfeit G Pen Goods that the Defendants have offered for sale are spurious marks which are identical with, or substantially indistinguishable from, the G Pen Trademarks.  The marks on the Counterfeit G Pen Goods are in fact counterfeit marks as defined in 15 U.S.C. § 1116(d).

49.    The marks affixed to the Counterfeit Stündenglass Goods that the Defendants have offered for sale are spurious marks which are identical with, or

14

substantially indistinguishable from, the Stündenglass Trademarks. The marks on the Counterfeit Stündenglass Goods are in fact counterfeit marks as defined in 15 U.S.C. § 1116(d).

50. Moreover, the products upon which the Counterfeit G Pen Marks and Counterfeit Stündenglass Marks are affixed, are almost identical to authentic products, so the offering for sale of the almost identical products with indistinguishable marks causes confusion in the marketplace among consumers.

51. The Defendants operate a retail smoke shop and distribution store through which they sell water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and other smoking related devices.

52. The Defendants have offered for sale both counterfeit G Pen products and counterfeit Stündenglass products with the G Pen trademarks and Stündenglass trademarks, respectively, and without the consent of GS. In fact, they have offered counterfeit vaporizers bearing imitations of the G Pen Trademarks (hereinafter referred to a "Counterfeit G Pen Goods") and counterfeit gravity infuser waterpipes bearing imitations of the Stündenglass Trademarks (hereinafter referred to as "Counterfeit Stündenglass Goods"), neither were made or authorized by GS.

53. Nevertheless, the Defendants have offered for sale in commerce the Counterfeit G Pen Goods and Counterfeit Stündenglass Goods, specifically, the Defendants have offered for sale reproductions, counterfeits, copies and/or colorable imitations of one or more of the G Pen Marks (hereinafter the "Infringing G Pen

15

Marks"), and one or more of the Stündenglass Marks (hereinafter the "Infringing Stündenglass Marks"), detailed above.

54.    The Defendants have, without the consent of GS, offered for sale in their store, Counterfeit G Pen Goods bearing the Infringing G Pen Marks and Counterfeit Stündenglass Goods bearing the Infringing Stündenglass Marks, bearing the likeness of the G Pen Trademarks and Stündenglass Trademarks, respectively, in the United States.

55.    Moreover, the products upon which the Counterfeit Marks are affixed are almost identical to authentic products, so the offering for sale of the almost identical products with indistinguishable marks causes confusion in the marketplace among consumers.

56.    In the ongoing investigation into the sales of counterfeit products bearing both the counterfeit G Pen Marks and counterfeit Stündenglass Marks, COSMO offered for sale Counterfeit G Pen Goods and Counterfeit Stündenglass Goods.

57.    Specifically, on June 8, 2022, GS's investigator attended COSMO's location, which was open to the public, and observed that it had an excess of vaporizers which appeared to display each of the G Pen Marks and an excess of gravity infusers which appeared to display each of Stündenglass Marks. The investigator purchased six vaporizers ($17.99 each) with nine of the aforementioned G Pen Marks affixed to each of them, and two gravity infuser waterpipes ($150.00

each) with the four aforementioned Stündenglass Marks affixed to each of them, from COSMO, for a total price of $453.95, charged to the account of GS's investigator. Upon physical inspection by GS' investigator, the vaporizers were found to be Counterfeit G Pen Products in that the displayed the Infringing G Pen Marks, and the gravity infuser waterpipes were found to be Counterfeit Stündenglass Products in that they displayed the Infringing Stündenglass Marks.

58.    Attached hereto as Exhibit "D" are the photographic examples of the Defendants use of the Infringing G Pen Marks, taken from the Counterfeit G Pen Goods, and the Infringing Stündenglass Marks, taken from the Counterfeit Stündenglass Goods.  As seen in the pictures, the Counterfeit G Pen Goods contained all nine of GS's G Pen marks: U.S. Trademark Registration Number 4,390,645; U.S. Trademark Registration Number 5,368,594; U.S. Trademark Registration Number 4,470,963; U.S. Trademark Registration Number 4,616,071; U.S. Trademark Registration Number 4,466,586; U.S. Trademark Registration Number 5,405,360; U.S. Trademark Registration Number 5,405,361; U.S. Trademark Registration Number 5,264,986; and U.S. Trademark Registration Number 5,264,988.  The Defendants use of the Counterfeit G Pen Marks is substantially indistinguishable, if not identical, to GS's G Pen Marks.  Furthermore, as seen in the pictures, the Counterfeit Stündenglass Goods contained all four of GS' Stündenglass marks on them: U.S. Trademark Registration Number 6,633,884; U.S. Trademark Registration Number 6,174,292; U.S. Trademark Registration Number 6,174,291; and U.S.

Trademark Registration Number 7,028,399.  The Defendants use of the Counterfeit Stündenglass Marks is substantially indistinguishable, if not identical, to GS's Marks.

59.    Once more, on May 9, 2024, GS's investigator attended COSMO's location, which was open to the public, and observed that it had an excess of roughly 79 vaporizers which appeared to display each of the G Pen Marks, and gravity infuser waterpipes which appeared to display each of the Stündenglass Marks. The investigator purchased twenty vaporizers ($20.00 each) with each of the nine aforementioned G Pen Marks affixed to them, and  ten gravity infuser waterpipes ($110.00 each) with each of the four aforementioned Stündenglass Marks affixed to them, from COSMO, for a total price of $3,026.96, charged to the account of GS's investigator. Upon physical inspection by GS' investigator, the vaporizers were found to be Counterfeit G Pen Products in that the displayed the Infringing G Pen Marks, and the gravity infuser waterpipes were found to be Counterfeit Stündenglass Products in that they displayed the Infringing Stündenglass Marks.

60.    Attached hereto as Exhibit "E" are the photographic examples of the Defendants use of the Infringing G Pen Marks, taken from the Counterfeit G Pen Goods, and the Infringing Stündenglass Marks, taken from the Counterfeit Stündenglass Goods.  As seen in the pictures, the Counterfeit G Pen Goods contained all nine of GS's G Pen marks: U.S. Trademark Registration Number 4,390,645; U.S. Trademark Registration Number 5,368,594; U.S. Trademark Registration Number 4,470,963;  U.S.  Trademark  Registration  Number  4,616,071;  U.S.  Trademark

18

Registration Number 4,466,586; U.S. Trademark Registration Number 5,405,360; U.S. Trademark Registration Number 5,405,361; U.S. Trademark Registration Number 5,264,986; and U.S. Trademark Registration Number 5,264,988.   The Defendants use of the Counterfeit G Pen Marks is substantially indistinguishable, if not identical, to GS's G Pen Marks.   Furthermore, as seen in the pictures, the Counterfeit Stündenglass Pen Goods contained all four of GS' Stündenglass marks on them: U.S. Trademark Registration Number 6,633,884; U.S. Trademark Registration Number 6,174,292; U.S. Trademark Registration Number 6,174,291; and U.S. Trademark Registration Number 7,028,399.   The Defendants use of the Counterfeit Stündenglass Marks is substantially indistinguishable, if not identical, to GS's Marks.

61.    GEORGE A. MALEK authorized, directed, and/or participated in COSMO's offer for sale, in commerce, of the Counterfeit G Pen Goods and the Counterfeit Stündenglass Goods.   GEORGE A. MALEK's acts were a moving, active, and conscious force behind COSMO's infringement of both the G Pen Trademarks and the Stündenglass Trademarks.

62.    The Defendants' use of the counterfeit G Pen Trademarks began after the registration of the G Pen Trademarks.   Neither GS, nor any of its authorized agents, have consented to the Defendants' use of the G Pen Trademarks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof.

63.    The Defendants' use of the counterfeit Stündenglass Trademarks began

after the registration of the Stündenglass Trademarks.  Neither GS, nor any of its authorized agents, have consented to the Defendants' use of the Stündenglass Trademarks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof.

64.    The unauthorized offering for sale by COSMO, under the authority, direction and/or participation of GEORGE A. MALEK, of both the Counterfeit G Pen Goods and the Counterfeit Stündenglass Goods was an unlawful act in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

65.    The offer for sale by the Defendants of the Counterfeit G Pen Goods bearing the Infringing G Pen Marks has caused GS to suffer losses and is likely to cause damage to the goodwill and reputation associated with the G Pen Trademarks, which are owned by GS.

66.    The offer for sale by the Defendants of the Counterfeit Goods bearing the Infringing Marks has caused GS to suffer losses and is likely to cause damage to the goodwill and reputation associated with the Stündenglass Trademarks, which are owned by GS.

67.    COSMO's use of the G Pen Marks includes displaying to offer for sale unauthorized copies of Counterfeit G Pen branded products.  COSMO's offering to sell the G Pen counterfeit products, bearing the Infringing G Pen Marks in this manner, was, and is, likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit G Pen Goods.

68.    COSMO's use of the Stündenglass Marks includes displaying to offer for sale unauthorized copies of Counterfeit Stündenglass branded products. COSMO's offering to sell the Stündenglass counterfeit products, bearing the Infringing Stündenglass Marks in this manner, was, and is, likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Stündenglass Goods.

69.    COSMO used images and names identical to or confusingly similar to the G Pen Marks, to confuse customers and aid in the promotion and sales of Counterfeit G Pen Goods under the Infringing G Pen Marks.  The Infringing G Pen Marks affixed to the Counterfeit G Pen Goods that COSMO has offered for sale are confusingly identical or similar to the G Pen Marks that GS affixes to its vaporizers. The Counterfeit G Pen Goods and GS's goods are both vaporizers, and marks identical or confusingly similar to the G Pen marks appear on the Infringing G Pen Goods.

70.    The Defendants' Counterfeit G Pen Goods travel in identical channels of trade and are sold to identical consumers as genuine G Pen goods.

71.    COSMO used images and names identical to or confusingly similar to the Stündenglass Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Marks.  The Infringing Marks affixed to the Counterfeit Goods that COSMO has offered for sale are confusingly identical or similar to the Stündenglass Marks that GS affixes to its Gravity Infusers. The

21

Counterfeit Goods and GS's goods are both gravity infusers, and marks identical or confusingly similar to the Stündenglass marks appear on the Infringing Goods.

72.    The Defendants' Counterfeit Goods travel in identical channels of trade and are sold to identical consumers as genuine Stündenglass goods.

73.    The vaporizers that COSMO sells and offers for sale under the Infringing G Pen Marks are made of substantially inferior and/or different materials as compared to genuine G Pen brand products.

74.    The gravity infuser waterpipes that COSMO sells and offers for sale under the Infringing G Pen Marks are made of substantially inferior and/or different materials as compared to genuine Stündenglass brand products.

75.    COSMO has offered for sale its vaporizers under the Infringing G Pen Marks waterpipes under the Infringing Stündenglass Marks and through its wholesale store.

76.    COSMO has intentionally caused or knowingly facilitated the infringement of both the G Pen Marks and the Stündenglass Marks by third party retailers.

77.    COSMO knew or had reason to know that its distribution of vaporizers displaying the Infringing G Pen Marks to third party retailers, would cause third party retailers to infringe upon the G Pen Marks by selling and offering to sell vaporizers having the Infringing G Pen Marks.

78.    COSMO knew or had reason to know that its distribution of waterpipes

22

displaying the Infringing Marks to third party retailers, would cause third party retailers to infringe upon the Stündenglass Marks by selling and offering to sell waterpipes having the Infringing Stündenglass Marks.

79.    COSMO and GEORGE A. MALEK's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by COSMO, and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by COSMO originate from, and are associated or affiliated with, or otherwise authorized by GS.

80.    COSMO and GEORGE A. MALEK's acts are willful with the deliberate intent to trade on the goodwill of both the G Pen Marks and Stündenglass Marks, cause confusion and deception in the marketplace, and divert potential sales of the Plaintiff's vaporizers and gravity infuser waterpipes to COSMO.    The Defendants, as both distributors and merchants of tobacco shop goods, are held to the standard of having specialized knowledge in the tobacco shop industry.    It is readily apparent that the Defendants, as merchants, have failed to conduct any reasonable inquiry into the authenticity of the goods sold by their distribution shop and have acted with at least willful blindness as to GS' intellectual property rights in the G Pen marks and Stündenglass marks.    Here, the Defendants sold counterfeit G Pen products purporting to be G Pen Elite vaporizers for between $17.99 and $20.00 each

23

whereas authentic G Pen Elite vaporizers are sold at wholesale pricing of roughly $50.00 and have a manufacturer suggested retail price of roughly $100.00. Additionally, the Defendants sold counterfeit Stündenglass products purporting to be Stündenglass gravity infuser waterpipes for $110.00 each whereas authentic Stündenglass products are sold at wholesale pricing at roughly $300.00 and have a manufacturer suggested retail price of $599.95 per unit. In fact, this price is even less than GS' cost to produce the product. Lastly, the counterfeit Stündenglass product sold by the Defendants lacked an authentication sticker which the Plaintiff has stated on its website is present on all authentic Stündenglass products and used by the customer to register their product for GS' 10-year warranty.

81.    COSMO and GEORGE A. MALEK's acts have caused damage and immediate irreparable harm to GS, the G Pen Marks, and the Stündenglass Marks, and to its valuable reputation and goodwill with the consuming public for which GS has no adequate remedy at law.

82.    As a proximate result of the unfair advantage accruing to GEORGE A. MALEK and COSMO's business from deceptively trading on GS's advertising, sales, and consumer recognition, GEORGE A. MALEK and COSMO, have made profits and gains to which they are not in law or equity entitled.

83.    The injuries and damages sustained by GS has been directly and proximately caused by COSMO and GEORGE A. MALEK's offers for sale of their

EON LAW, LLP

goods bearing infringements or counterfeits of the G Pen Marks and the Stündenglass Marks.

84.    COSMO has contributorily caused harm to GS through third party retailer sales of goods bearing the Infringing G Pen Marks and Infringing Stündenglass Marks distributed to them by COSMO.

85.    Through such business activities, GEORGE A. MALEK and COSMO purposefully derived direct benefits from their interstate commerce activities by targeting foreseeable purchasers in the State of California, and in doing so, have knowingly harmed GS.

86.    The sale and distribution of Counterfeit G Pen Goods by COSMO has infringed upon the above-identified federally registered G Pen trademarks.

87.    Furthermore, the sale and distribution of Counterfeit Stündenglass Goods by COSMO has infringed upon the above-identified federally registered Stündenglass trademarks.

88.    The spurious marks or designations used by COSMO in interstate commerce are identical with, or substantially indistinguishable from, the G Pen Marks on goods covered by the G Pen Marks.  Such use therefore creates a false affiliation between COSMO, GS, and the G Pen Marks.

89.    The spurious marks or designations used by COSMO in interstate commerce are identical with, or substantially indistinguishable from, the Stündenglass Marks on goods covered by the Stündenglass Marks.  Such use

25

therefore creates a false affiliation between COSMO, GS, and the Stündenglass Marks.

90.    Due to the actions of GEORGE A. MALEK and COSMO, GS has needed to retain the undersigned counsel and pay the costs of bringing an action forward. GEORGE A. MALEK, and COSMO should be responsible for paying GS's reasonable costs of the action.

91.    GEORGE A. MALEK, and COSMO's acts have damaged, and will continue to damage GS, and GS has no adequate remedy at law.

92.    Moreover, COSMO, GEORGE A. MALEK's wrongful acts will continue unless enjoined by the Court. Accordingly, GEORGE A. MALEK, and COSMO must be restrained and enjoined from any further counterfeiting or infringement of both the G Pen Marks and the Stündenglass Marks.

**The Asserted Patents**

93.    On February 15, 2022, U.S. Patent No. D943,817 ("the 'D817 patent"), entitled "Hookah," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") and names Christian Rule, David Vuong, Christopher Folkerts, Gabriel Alvarez, Tracey Huston, and Michael Trzecieski as inventors. A copy of the 'D817 patent is attached hereto as Exhibit "F."

94.    The 'D817 patent discloses and claims the non-functional ornamental design for a Hookah, which is described and shown from multiple perspectives in Figures 1-8, reproduced below.



95.    On November 22, 2022, U.S. Patent No. D970,804 ("the 'D804 patent"), entitled "Hookah," was duly and legally issued by the USPTO and names Christian Rule, David Vuong, Christopher Folkerts, Gabriel Alvarez, Tracey Huston, and Michael Trzecieski as inventors.  A copy of the 'D804 patent is attached hereto as Exhibit "G."

96.    The 'D804 patent discloses and claims the non-functional ornamental design for a Hookah, which is described and shown from multiple perspectives in Figures 1-8, reproduced below.



97.    Moreover, GS' Stündenglass waterpipe Hookah and Stündenglass Kompact waterpipe Hookah are marked with the patent number of the 'D817 and 'D804 patents on the product's packaging.

98.    An example of the ornamental designs disclosed and claimed by the 'D817 and 'D804 patents are embodied by the Plaintiff's waterpipe Hookah which embodies the same non-functional ornamental features.  An example of the Plaintiff's waterpipe Hookah from GS' 2024 Catalog is depicted below.



**Defendant's Infringing Designs**

99.    The Defendant COSMO SMOKE SHOP LLC manufacturers, imports, sells, and/or offers for sale waterpipe Hookahs.

100.   COSMO SMOKE SHOP LLC business model is to steal the intellectual property and designs of others.

101.   The Defendant COSMO SMOKE SHOP LLC imported, sold, and/or offered for sale not only counterfeit waterpipes which bear the Stundenglass Trademarks, but also waterpipes (also known as "Hookahs") which are unauthorized copies of the designs of the Stundenglass waterpipes.  Hereinafter the Counterfeit Stundenglass Products together with those waterpipes which COSMO SMOKE SHOP LLC sold, offered for sale, distributed, or advertised which did not have the

28

Stundenglass marks, but have implemented the unauthorized use of GS' patented designs are hereby referred to as "Infringing Products."  The Infringing Products incorporate the ornamental designs for Hookahs claimed by the 'D817 and 'D804 patents without authorization or license from GS.

102.   In the ongoing investigation into the sales of products infringing upon the Plaintiff's 'D817 and 'D804 patents, COSMO SMOKE SHOP LLC offered for sale waterpipe Hookahs that infringed upon the 'D817 and 'D804 patents.

103.   Specifically, on June 8, 2022, GS' investigator visited a COSMO SMOKE SHOP LLC's facility, which was open to the public, and observed that it had an excess of at least two Gravity Infuser Hookahs which misappropriated the Plaintiff's patented Hookah designs.  The investigator purchased one of the Gravity Infuser Hookahs which had the infringed upon both the 'D817 and 'D804 patents, from COSMO SMOKE SHOP LLC, for a cost of $150.00 each charged to the account of GS' investigator, and the Infringing Products infringed upon the 'D817 and 'D804 patents, directly and under the doctrine of equivalents, in that  an ordinary observer familiar with the prior art would be deceived into thinking that the design of the Infringing Products was the same as the 'D817 and 'D804 patents.

104.   Moreover, on May 9, 2024, GS' investigator visited  COSMO SMOKE SHOP LLC's facility, which was open to the public, and observed that it had at least six gravity infuser waterpipe Hookahs, which misappropriated the Plaintiff's patented Hookah designs. The investigator purchased ten of the gravity infuser

waterpipe Hookahs which had the infringed upon both the 'D817 and 'D804 patents, from COSMO, for a cost of $110.00 each, charged to the account of GS' investigator, and the Infringing Products infringed upon the 'D817 and 'D804 patents, directly and under the doctrine of equivalents, in that an ordinary observer familiar with the prior art would be deceived into thinking that the design of the Infringing Products was the same as the 'D817 and 'D804 patents.

105.   Images of samples of the Infringing Products are identified in the charts below. On information and belief, these samples are designed as Gravity Infuser Hookahs for use with smoking various phytomaterials and food infusion.

106.   As the exemplary side-by-side comparisons shown below reveal, Defendant COSMO SMOKE SHOP LLC, has misappropriated the Plaintiff's patented waterpipe Hookah designs in the Infringing Products. The comparisons below are representative of all the Infringing Products.

107.   The Plaintiff conducted a pre-suit investigation to compare the Infringing Product with the claims of the 'D817 and 'D804 patents.

108.   The chart below shows a comparison of the Figures of the 'D817 and 'D804 patents with a sample of Defendant COSMO SMOKE SHOP LLC's product.

| View | 'D817 Patent | 'D804 Patent | Infringing Product |
|------|--------------|--------------|--------------------|
| Fig. 1 |  |  |  |
| Fig. 2 |  |  |  |
| Fig. 3 |  |  |  |
| Fig. 4 |  |  |  |
| Fig. 5 |  |  |  |
| Fig. 6 |  |  |  |
| Fig. 7 |  |  |  |
| Fig. 8 |  |  |  |

109.   Worse, COSMO SMOKE SHOP LLC has distributed the Infringing Products to merchants which in turn offered for sale and sold the Infringing Products to unsuspecting customers.

110.   COSMO SMOKE SHOP LLC has intentionally caused or knowingly facilitated the infringement of the 'D817 and 'D804 patents by third party retailers.

111.   COSMO SMOKE SHOP LLC knew or had reason to know that its distribution of the Infringing Products to third party retailers which would cause third party retailers to infringe upon the D817 and 'D804 patents by selling and offering to sell the Infringing Products

112.   COSMO SMOKE SHOP LLC has contributorily caused harm to GS through third party retailer sales of the Infringing Products distributed to them by COSMO SMOKE SHOP LLC.

**Count One**
**Federal Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114**
(COSMO SMOKE SHOP LLC and GEORGE A. MALEK)

113.   The Plaintiff avers Paragraphs 1 through 92, which are stated above and incorporate the allegations therein, as though they are fully restated in this Count by reference.

114.   GS owns the federally registered G Pen Trademarks and Stündenglass Trademarks, as set forth in more detail in the foregoing paragraphs.

115.   The Defendants, without authorization from GS, have used in commerce

a spurious designation that is identical with, or substantially indistinguishable from, the G Pen Trademarks and the Stündenglass Trademarks on the same goods covered by the G Pen Trademarks and the Stündenglass Trademarks, respectively.

116. The Defendants' unauthorized use of counterfeit marks of the registered G Pen Trademarks and Stündenglass Trademarks on and in connection with the Defendants' offer for sale in commerce is likely to cause confusion or mistake in the minds of the public.

117. The Defendants' conduct as alleged herein is willful and intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS, the G Pen Trademarks, or the Stündenglass Trademarks.

118. The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

119. The Defendants' actions constitute the use by the Defendants of one or more "counterfeit mark(s)" as defined in 15 U.S.C. § 1116(d)(1)(B).

120. The Defendants' use in commerce of the counterfeit G Pen Trademarks and counterfeit Stündenglass Trademarks has resulted in lost profits and business to GS, which are difficult to determine. The Defendants have also, by selling counterfeit G Pen products and counterfeit Stündenglass products, caused considerable damage to the goodwill of the G Pen Trademarks and Stündenglass Trademarks, and diminished the brand recognition of both the G Pen Trademarks and Stündenglass Trademarks by introducing counterfeit products into the marketplace.

121.   By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**Count Two**
**Federal False Designation of Origin 15 U.S.C. § 1125(a)**
(COSMO SMOKE SHOP LLC and GEORGE A. MALEK)

122.   The Plaintiff avers Paragraphs 1 through 92, which are stated above and incorporate the allegations therein, as though they are fully restated and incorporated in this Count by reference.

123.   GS owns both the federally registered G Pen Trademarks and Stündenglass Trademarks, as set forth in more detail in the foregoing paragraphs.

124.   The Defendants, without authorization from GS, have used in commerce spurious designations that are identical with, or substantially indistinguishable from, the G Pen Trademarks and Stündenglass Trademarks on the same goods covered by the G Pen Trademarks and Stündenglass Trademarks, respectively.

125.   The Defendants' unauthorized use of counterfeit marks of the registered G Pen Trademarks and  counterfeit marks of the registered Stündenglass Trademarks on and in connection with the Defendants' offers for sale in commerce is likely to cause confusion or mistake in the minds of the public.

126.   The Defendants' unauthorized use in commerce of the G Pen Trademarks and Stündenglass Trademarks as alleged herein constitutes use of a false

34

designation of origin and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

127.   The Defendants' conduct as alleged herein is willful and is intended to, and is likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS, the G Pen Trademarks, or the Stündenglass Trademarks.

128.   The Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to GS, and to the goodwill and reputation of the G Pen Trademarks and the Stündenglass Trademarks.  Moreover, it will continue to cause damage to GS and confuse the public unless enjoined by this Court.

129.   GS has no adequate remedy at law.

130.   By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**Count Three**
**Direct and Contributory Infringement of the 'D817 and 'D804 Patents**
(COSMO SMOKE SHOP LLC)

131.   The Plaintiff avers Paragraphs 1 through 112, which are stated above and incorporate the allegations therein, as though they are fully restated in this Count by reference.

132.   The 'D817 and 'D804 patents claim non-functional ornamental designs,

specifically, an "ornamental design for a Hookah."

133.   GS' Hookahs are marked with the patent number of the 'D817 and 'D804 patents on their product packaging.

134.   COSMO SMOKE SHOP LLC had actual and constructive knowledge of GS' ownership of the claims of the 'D817 and 'D804 patents.

135.   COSMO SMOKE SHOP LLC has sold infringing products that are Hookahs with ornamental designs that infringe the 'D817 and 'D804 patents.  As shown in the charts in paragraph 108 above, COSMO SMOKE SHOP LLC's Infringing Products have misappropriated the ornamental design for a Hookah as shown and described in the 'D817 and 'D804 patents.

136.   In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the non-functional ornamental designs for a Hookah claimed in the 'D817 and 'D804 patents and the Infringing Products are substantially the same, with resemblance such as to deceive an ordinary observer, inducing him or her to purchase an Infringing Product supposing it to be the design claimed in the 'D817 and 'D804 patents.

137.   The Defendant's distribution of goods infringing upon the 'D817 and 'D804 patents to has intentionally induced retailers to offer for sale products that infringe upon the 'D817 and 'D804 patents.

138.   The Defendant knew or had reason to know that the Infringing Products supplied to retailers would cause these retailers to infringe upon the 'D817 and 'D804

patents by selling and offering for sale the Infringing Products.

139.   The Defendant COSMO SMOKE SHOP LLC, without authority has directly and contributorily infringed and continues to directly and contributorily infringe the 'D817 and 'D804 patents, under 35 U.S.C. § 271(a), at least by manufacturing, importing, distributing, selling, offering for sale, and/or using within the United States, the Infringing Products.

140.   As a result of the Defendant's infringement of the 'D817 and 'D804 patents, GS has suffered and will continue to suffer damages.  GS is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty, as permitted under 35 U.S.C. § 284, as well as all remedies for design patent infringement permitted under 35 U.S.C. § 289.

141.   The Defendant, COSMO SMOKE SHOP LLC's infringement of the 'D817 and 'D804 patents is willful, making this an exceptional case and entitling GS to enhanced damages and attorneys' fees.

142.   On information and belief, the Defendant COSMO SMOKE SHOP LLC copied the design of GS' Hookah, which embody the design claimed in the 'D817 and 'D804 patents, to arrive at the design of the Infringing Product.

143.   GS has been irreparably harmed by COSMO SMOKE SHOP LLC's infringement of the 'D817 and 'D804 patents and will continue to be harmed unless COSMO SMOKE SHOP LLC's infringing conduct is restrained and enjoined by order of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, GS HOLISTIC, LLC, respectfully requests the following relief against the Defendants, as follows:

1.     With regard to Plaintiff's Count I for trademark infringement:

a.     Disgorgement of profits under 15 U.S.C. § 1117(a);

b.     Treble damages under 15 U.S.C. § 1117(b);

c.     Statutory damages under 15 U.S.C. § 1117(c);

d.     Costs of suit under 15 U.S.C. § 1117(a);

e.     Find this case to be an exceptional case;

f.     Award GS HOLISTIC LLC its reasonable attorneys' fees and costs;

g.     Joint and several liability for GEORGE A. MALEK and other officers, and directors, for the knowing participation in the counterfeiting activities of COSMO SMOKE SHOP LLC.

h.     Preliminarily and permanently enjoining COSMO SMOKE SHOP LLC and its agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

i.     The import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit Stündenglass product identified in the Complaint and

any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof;

i.      Pursuant to 15 U.S.C. § 1116(a), directing COSMO SMOKE SHOP LLC to file with the Court and serve on the Plaintiff's within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which COSMO SMOKE SHOP LLC has complied with the injunction;

j.      For an order from the Court requiring that the Defendants provide complete accountings and for equitable relief, including that the Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if the Defendants had complied with their legal obligations, or as equity requires;

k.      For an order from the Court that an asset freeze or constructive trust be imposed on all monies and profits in the COSMO SMOKE SHOP LLC's possession, which rightfully belong to the Plaintiff;

l.      For an order requiring the Defendants to produce to the Plaintiff, within thirty (30) days of entry of a Final Judgment, any and all documents including bank statements and comparable reporting documents from all other financial institutions of which the Defendants are customers including but not limited to banks, credit unions, trusts, trust companies, Savings & Loan Companies for the previous three months;

m.    Pursuant to 15 U.S.C. § 1118 requiring that the Defendants and all others acting under the Defendants' authority, at its cost, be required to deliver up to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the Stündenglass Trademarks.

2.    With regard to Plaintiff's Count II for false designation and unfair competition:

a.    Disgorgement of profits under 15 U.S.C. § 1117(a);

b.    Treble damages under 15 U.S.C. § 1117(b);

c.    Costs of suit; and

d.    Joint and several liability for GEORGE A. MALEK, and other officers, and directors, for the knowing participation in the counterfeiting activities of COSMO SMOKE SHOP LLC.

3.    With regard to Plaintiff's Count III for patent infringement of the 'D804 and 'D817 patents:

a.    Adjudge that the Defendant has directly infringed, literally or under the doctrine of equivalents, claim 1 of the 'D817 and 'D804 patents, and that the manufacture, use, sale, offer for sale, and/or importation of at least the Infringing Product infringes claim 1 of the 'D817 and 'D804 patents;

b.    Preliminarily and permanently enjoining COSMO SMOKE SHOP LLC and its agents, employees, officers, directors, owners, representatives, successor

40

companies, related companies, and all persons acting in concert or participation with them, from infringing the 'D817 and 'D804 patents;

c.    For an order from the Court requiring that the Defendants provide complete accountings and for equitable relief, including that the Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if the Defendants had complied with their legal obligations, or as equity requires;

d.    Award GS damages adequate to compensate for COSMO SMOKE SHOP LLC's infringement of the 'D817 and 'D804 patents, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284, together with prejudgment interest from the date the infringement began;

e.    Award GS the total profit made by COSMO SMOKE SHOP LLC from its infringement of the 'D817 and 'D804 patents under 35 U.S.C. § 289;

f.    Award GS increased damages under 35 U.S.C. § 284 for COSMO's willful and deliberate infringement of the 'D817 and 'D804 patents;

g.    Declare this to be an exceptional case under 35 U.S.C. § 285;

h.    Award GS attorney fees and costs incurred in prosecuting this action, together with pre-judgment and post-judgment interest; and

4.    For any other and further relief as the Court may deem just and equitable.

## **Demand for Jury Trial**

The Plaintiff demands a Jury Trial on all issues so triable.

Date: November 11, 2024

Respectfully submitted,

/s/ *Tomas Carlos Leon.*
Tomas Carlos Leon
CA Bar #321117
Leon Law LLP
1145 W. 55th Street
Los Angeles, California 90037
tommie@leon.law
*Attorney for the Plaintiff*